# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK NATIONAL ASSOCIATION, | : | |
| | : | Case No. 11 CV 7996 |
| Plaintiff/Counter-Defendant, | : | |
| | : | Judge John F. Grady |
| v. | : | Magistrate Judge Morton Denlow |
| AUTOSCRIBE CORPORATION and POLLIN PATENT LICENSING, LLC, | : | |
| Defendants/Counter-Plaintiffs. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF BMO HARRIS BANK NATIONAL ASSOCIATION TO DISMISS COUNTERCLAIM OF DEFENDANTS PURSUANT TO FED. R. CIV. P. 12(B)(6)

Plaintiff/Counter-Defendant BMO Harris Bank National Association ("BMO") respectfully submits this memorandum in support of its motion to dismiss the counterclaim for patent infringement filed by Defendants/Counter-Plaintiffs Autoscribe Corporation ("Autoscribe") and Pollin Patent Licensing, LLC ("PPL," and together with Autoscribe, "Defendants") pursuant to Fed. R. Civ. P. 12(b).

## PRELIMINARY STATEMENT

Defendants have asserted a counterclaim of infringement of U.S. Patent No. 7,117,171 (the "'171 Patent"). The counterclaim, however, fails to meet the threshold pleading requirements of Fed. R. Civ. P. 8(a) as articulated in both *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). Defendants have failed to identify a single product or action by BMO that infringes the '171 patent, instead stating only legal conclusions. Because Defendants have failed to allege facts sufficient to state a claim for infringement, the Court must dismiss Defendants' counterclaim pursuant to Fed. R. Civ. P.

12(b)(6).

## STATEMENT OF FACTS

1.      Defendants claim that Autoscribe is the owner by assignment of all legal rights and title in and to the '171 patent, and that PPL is an exclusive licensee to rights in the '171 patent.  Counterclaim ¶¶ 6-7.

2.      On July 5, 2011, IP Dispute Resolution ("IPDR") sent BMO a letter on behalf of Defendants, alleging that BMO had infringed five of Defendants' patents, including the '171 patent, and requesting that BMO license those patents from Defendants.  That letter did not specify how BMO had infringed any of the five patents referenced or otherwise identify any particular manner of infringement by BMO.[1]

3.      Defendants now allege in their counterclaim that BMO has generally committed unspecified acts of patent infringement by "making, using and/or conducting business through its call centers to collect debt throughout the United States in a manner which is covered by at least claims 6 and 12 of the '171 patent."  Counterclaim ¶ 10.  Defendants, though, fail to allege in their counterclaim a single product or action by BMO that infringes the '171 patent.

4.      Defendants further allege that BMO has infringed the '171 patent "by knowingly and actively inducing others to infringe and by contributing to the infringement of others by making, using and/or conducting check by phone business through its call centers."  Counterclaim ¶ 10.

---

[1] The July 5, 2011 letter, relied upon by Defendants in their counterclaim and thus incorporated by reference into the counterclaim, is attached hereto for the Court's convenience as Exhibit A.

5.      Defendants assert only that BMO's infringement "occurred with knowledge of the '171 patent, willfully and deliberately" (Counterclaim ¶ 13), but Defendants provide no factual basis for these averments.   Defendants allege only that BMO had "actual notice of infringement through the July 5, 2011 letter" referenced by BMO in its Complaint. Counterclaim ¶ 10.

## GOVERNING LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must set forth a "plain statement of the claim showing that the pleader is entitled to relief."  Although the pleading standards of Fed. R. Civ. P. 8(a) do not require detailed factual assertions, the complaint must contain more than "'naked assertion[s]'" without factual support. *Iqbal*, 129 S.Ct. at 1949, quoting *Twombly*, 550 U.S. at 555, 557.

Further, while the court must assume that all well-pled facts are true for purposes of a motion to dismiss under Rule 12(b)(6), that requirement does not apply to "'labels and conclusions.'" *Iqbal*, 129 S.Ct. at 1949, quoting *Twombly*, 550 U.S. at 555.  In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citations omitted).

Further, to the extent that the complaint does contain factual allegations, they must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citations omitted).  Specifically, those allegations "must be enough to raise a right to relief above the speculative level" and "raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550

U.S. at 545. The court must dismiss the complaint "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. at 1950. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*.

The pleading standards outlined in *Iqbal* and *Twombly* apply to Defendants' counterclaim for patent infringement. *See, e.g., Iqbal*, 129 S.Ct. at 1953 (holding that the pleading standard outlined in *Twombly* applies to all causes of action because Fed. R. Civ. P. 8 "governs the pleading standard 'in all civil actions and proceedings in the United States district courts'") (internal citation omitted); *Gharb v. Rockwell Automation*, No. 11 CV 405, 2011 WL 5373989, at \*3-5 (N.D. Ill. Nov. 4, 2011) (dismissing patent infringement claims based on *Twombly* pleading standards); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 1706136, at \*3-4 (N.D. Ill. May 5, 2011) (same); *Source One Global Partners, LLC v. KGK Synergize, Inc.*, No. 08 C 7403, 2009 WL 2192791, at \*7-8 (N.D. Ill. July 21, 2009) (same).

## ARGUMENT

Based on the pleading standards outlined in *Twombly* and *Iqbal*, as well as the decisions issued by this Court, Defendants' counterclaim for patent infringement fails as a matter of law. Defendants' assertion – that BMO infringed their patent by "making, using and/or conducting business through its call centers" (Counterclaim ¶ 10) is nothing but a legal conclusion lacking any factual support. For that reason, this Court must dismiss Defendants' counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).

LEGAL_US_E # 96242418.1

A. This Court Must Dismiss Defendants' Counterclaim for Direct Infringement.

For their claim of direct infringement, Defendants allege only that BMO infringed the '171 patent by "making, using and/or conducting business through its call centers to collect debt throughout the United States in a manner which is covered by at least claims 6 and 12 of the '171 patent." Counterclaim ¶ 10. Defendants have not alleged a single fact demonstrating how, when, where, or with what products BMO allegedly infringed the '171 patent. The failure to identify a specific infringing product or product parts is fatal to Defendants' counterclaim. *Trading Techs. Int'l, Inc.*, 2011 WL 1706136, at *3, quoting *Bender v. LG Electronics U.S.A., Inc.*, No. 09 C 2114, 2010 WL 889541, at *3 (N.D. Cal. Mar. 11, 2010) ("'without identifying specific products or product parts, [the plaintiff] has not put Defendants on notice as to what products or parts are subject to the infringement claim.'") *See also Gharb*, 2011 WL 5373989, at *4 (dismissing claims for direct infringement and noting that the complaint "is exactly the type of 'labels and conclusions' the Supreme Court prohibits in Iqbal and Twombly. 550 U.S. at 555, 129 S.Ct. at 1949."); *Source One Global Partners, LLC*, 2009 WL 2192791, at *7 (dismissing claims for direct infringement as containing only legal conclusions). Just as the mere mention of a defendant's websites in the context of a plaintiff's patent infringement allegation was insufficient to state a claim in *Trading Technologies*, the general allegation that BMO "conduct[s] business through call centers" fails to put BMO on notice of what the alleged infringing product is. *See Trading Techs.*, 2011 WL 1706136 at *3. As this Court held, a defendant "is entitled to be put on notice, with some specificity and clarity, which of its products are at issue in this suit, and which are not." *Id.* (also noting that another Northern District of Illinois judge required the same level of detail in a related case).

5

Here, Defendants have repeatedly failed to identify a product that infringes the '171 patent, both in the counterclaim and in the correspondence sent by IPDR to counsel for BMO on Defendants' behalf, and they have not provided any other factual support to put BMO on notice as to what alleged actions have infringed the patent in question. Defendants therefore have not met the pleading standards of Rule 8(a) as outlined in *Iqbal* and *Twombly*, and their counterclaim must be dismissed.

## B. This Court Must Dismiss Defendants' Counterclaim for Induced Infringement.

To demonstrate inducement of infringement, Defendants must establish "'first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Trading Techs. Int'l, Inc.*, 2011 WL 1706136, at *3, quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697-98 (Fed. Cir. 2008). In addition, the claim must allege that the direct infringement was undertaken by a third party. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). Therefore, to state a claim for induced infringement, Defendants must allege: (1) knowledge of the patent in question; (2) knowing inducement of infringing acts by others; and (3) direct infringement by a third party.

Defendants have not sufficiently alleged any of the required elements for induced infringement. Here, Defendants have pled no facts regarding BMO's alleged indirect infringement, other than the assertion that the letter sent to BMO on July 5, 2011 placed BMO on notice of BMO's purported infringement (as opposed to any infringement by a third party). Further, that letter and other correspondence sent to counsel for BMO failed to identify any products allegedly infringing Defendants' patents or any methods of infringement. Instead,

6

Defendants have made only the conclusory allegation that BMO infringed the '171 patent "by knowingly and actively inducing others to infringe and by contributing to the infringement of others by making, using and/or conducting check by phone business through its call centers." Counterclaim ¶ 10.

Defendants' counterclaim, however, contains **no** factual content indicating that BMO knowingly and with specific intent encouraged a third party to infringe that '171 patent, or that a third party in fact committed direct infringement. These threadbare conclusions, lacking any factual detail supporting a conclusion that BMO knew of the patent at issue or knowingly induced a third party to infringe that patent, are insufficient as a matter of law. *See*, *e.g.*, *Triune Star, Inc. v. Walt Disney Co.*, No. 07-1256, 2008 WL 3849913, at *4 (C.D. Ill. Aug. 14, 2008) (holding that "a basis for the inference that the defendant knew or should have known that its actions would induce actual infringement of that patent" is an essential element of a claim for induced infringement; dismissing plaintiff's claim where the complaint was "devoid of anything more substantive than the bald assertion of active inducement"). Because Defendants have not alleged the required elements of a claim for induced infringement, this Court must dismiss Defendants' counterclaim.

## C. This Court Must Dismiss Defendants' Counterclaim for Contributory Infringement.

To state a claim for contributory infringement, Defendants must demonstrate "direct infringement and that the defendants (1) knew of the patents at issue; (2) knew that the product they allegedly sold was especially made or adapted for infringing uses; and (3) knew that the product was not suitable for substantial non-infringing uses." *Trading Techs. Int'l, Inc.*, 2011 WL 1706136, at *3, citing *Lucent Techs., Inc.*, 580 F.3d at 1320. "For both types of indirect

infringement, the complaint must allege both knowledge of the patent and intent." *Trading Techs. Int'l, Inc.*, 2011 WL 1706136, at *3, citing *Malinckrodt Inc. v. E-Z-EM Inc.*, 670 F. Supp. 2d 349, 354 (D. Del. 2009). Further, a claim for contributory infringement must allege direct infringement by a third party. *Lucent Technologies, Inc.*, 580 F.3d at 1322.

Once again, Defendants have made no such assertions. Defendants' counterclaim contains not a single allegation that BMO knew that the product was "made or adapted for infringing uses," or that the "product was not suitable for substantial non-infringing uses." The counterclaim also fails to assert that BMO had any knowledge or notice of alleged infringement by a third party. Indeed, Defendants' only statement regarding BMO's alleged contributory infringement is that BMO's infringement involved "contributing to the infringement of others by making, using and/or conducting check by phone business through its call centers." Counterclaim ¶ 10. Further, as noted above, Defendants at no point allege any direct infringement by a third party. Accordingly, Defendants' assertions regarding BMO's alleged contributory infringement are deficient as a matter of law and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

Defendants' allegations are nothing more than legal conclusions entirely lacking in factual support. As such, this Court must dismiss Defendants' counterclaim for patent infringement pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

Dated: December 30th, 2011 **BMO Harris Bank National Association**

8

/s/ Emily Newhouse Dillingham
Emily Newhouse Dillingham (IL #6290333)
PAUL HASTINGS LLP
191 North Wacker Drive
Thirtieth Floor
Chicago, Illinois  60606
Telephone:  (312) 499-6292
Facsimile:  (312) 499-6192
emilydillingham@paulhastings.com

Robert M. Masters (admitted *pro hac vice*)
Timothy P. Cremen  (admitted *pro hac vice*)
Lisa Y. Leung (admitted *pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC  20005
Telephone: (202) 551-1700
Facsimile: (312) 551-1705
robmasters@paulhastings.com
timothycremen@paulhastings.com

Bob Chen (admitted *pro hac vice*)
PAUL HASTINGS LLP
4747 Executive Drive
Twelfth Floor
San Diego, CA 92121
Telephone: (858) 458-3023
Facsimile: (858) 458-3123
bobchen@paulhastings.com

ATTORNEYS FOR BMO HARRIS BANK
NATIONAL ASSOCIATION

LEGAL_US_E # 96242418.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 30th, 2011, I electronically filed the foregoing

Memorandum in Support of Plaintiff's Motion to Dismiss Defendants' Counterclaim with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

attorneys of record for Defendants at their e-mail addresses on file with the Court.


/s/ Emily Newhouse Dillingham
Emily Newhouse Dillingham

# EXHIBIT A



July 5, 2011

Paul Nobel, General Counsel
Harris Bankcorp, Inc.
111 W. Monroe Street
Chicago, IL 60603

Re: Resolution of Patent Dispute

Dear Mr. Nobel:

IPDR is a business consulting firm that specializes in resolving patent disputes. We have successfully resolved more than 500 disputes alleging patent infringement. We are not a law firm and do not sue people. In fact, we believe that litigation is an extremely inefficient and expensive way to resolve these disputes. We are hired by patent owners, and companies accused of infringement.

IPDR has been hired by Autoscribe Corporation which owns 5 U.S. patents (U.S. Pat Nos. 7,117,171; 6,041,315; 5,966,698; 5,727,249 and 5,504,677) covering certain check by phone payment systems involving a live operator. Autoscribe is a pioneer in the collections industry that has been in business for over 20 years and continues to sell its products and services. These patents date back to 1992.

Autoscribe's patents cover systems where a user: contacts creditors via telephone; obtains and inputs certain financial and other payment information into a computer system; verifies the information; generates an electronic record or a physical check; and transmits the record or check to a clearing house so that a payment is processed and funds are transferred. Autoscribe believes that you have used and are using a system which is covered by one or more of its issued U.S. patents.

Autoscribe has already successfully licensed its patents to several major U.S. companies, including credit card issuers and mortgage providers, and also has licenses with certain software providers.

Under U.S. patent law, the manufacture, sale, or use of a patented system or process, without a license from the patent owner, constitutes patent infringement. In instances where the infringer may have purchased the infringing system from a third party seller or manufacturer, the use of the infringing system is enough to make the user of the infringing system liable to the patent owner for patent infringement. As a result, IPDR will not engage in discussions with any of your suppliers or vendors without your consent and participation.

Robert A. Berman | Chief Executive Officer | email: rob@IPdispute.com
16506 Akron St. Pacific Palisades CA 90272 | www.IPdispute.com | tel 310.309.2122  fax 310.349.3308



We understand that receiving a letter alleging patent infringement is not a pleasant experience. We also recognize that your goal is to make this matter go away as quickly and inexpensively as possible. We are committed to helping you achieve that goal. Please review the enclosed instructions entitled "**AUTOSCRIBE – STEPS FOR PROMPT RESOLUTION**", which will guide you through the process of resolving this matter.

IPDR has a limited period of time to resolve this matter, and has successfully done so in as little as 30 days. However, this matter will not go away on its own. If you do nothing, or do not respond in a timely manner, Autoscribe will take the matter away from IPDR and turn it over to Autoscribe's patent litigation attorneys. We have a very high success rate in resolving these matters without the need for litigation. Please give this matter your immediate attention and work with us.

As stated earlier, IPDR is not a law firm. Although you are welcome to include outside lawyers in any communications or meetings that we may have, we will not engage in discussions that do not include an in-house representative from your company. This has proven to be an essential element to our success in amicably resolving patent disputes such as this one.

Please note that any information that you share with IPDR will be deemed to be covered by Federal Rule of Evidence 408 and will not be used against you in the event that we are unable to amicably resolve this matter. In order to come to an amicable resolution, we will need to engage in good faith, mutual exchange of information. You have nothing to lose in working with us.

As evidence of our good faith and willingness to work with you to resolve this matter, enclosed is a presentation which explains how claims 6 and 12 of the '171 Patent apply to the check by phone collection system you are using. Also enclosed is a CD containing copies of the patents, and file histories for the patents.

We will contact you in approximately fourteen (14) days to confirm your receipt of these materials and schedule a convenient time for us to speak. In the interim, if you have any questions or concerns, please do not hesitate to contact us.

Thank you.

Sincerely,

Robert A. Berman
Enclosures
CC: Ellen Costello, CEO

Robert A. Berman | Chief Executive Officer | email: rob@IPdispute.com
16506 Akron St. Pacific Palisades CA 90272 | www.IPdispute.com | tel 310.309.2122 fax 310.349.3308



# AUTOSCRIBE – STEPS FOR PROMPT RESOLUTION

## Stage 1 - Preliminary Analysis

1. Identify whether you use an in-house system, or third party software to process check by phone transactions.

2. If you use third party software, check with IPDR to see if the third party has already been licensed by Autoscribe. If the software provider has been licensed already, once we confirm with the provider that you have been a customer for the past 6 years, the matter will be closed.

3. Confirm that your check by phone system incorporates the steps outlined in the enclosed PowerPoint presentation. If it does not, please immediately notify IPDR. Once we document the missing step or steps, the matter will be closed.

4. Determine the average number of check by phone transactions that you process per month, either by users new to the system, or total monthly transactions. Once we have this number, IPDR can tell you what the approximate cost of a license would be.

## Stage 2 – Additional Analysis

Once you have determined that you are not using a check by phone system which is already licensed by Autoscribe, you may want to engage a patent attorney to review the Autoscribe infringement allegations. Copies of the patents and their file histories are included on the disk enclosed with this package. Please note the following:

1. U.S. Patent No. 7,117,171 generally applies to check by phone systems which generate electronic records which are processed for payment.

2. U.S. Patent Nos. 6,041,315; 5,966,698; 5,727,249, and 5,504,677 generally apply to check by phone systems which generate physical drafts, which are processed for payment.

3. If your system only generates electronic records, your patent attorney need only focus on the '171 patent and its file history.

4. Autoscribe has previously engaged in and is currently engaged in patent infringement litigation regarding its check by phone patents. IPDR will supply any pleadings from Autoscribe's litigations that your attorney would like to review.

Once any legal defenses have been identified, the parties can assess their relative risks and determine the next courses of action.



# Autoscribe
# U.S. Patent No. 7,117,171
## Claim 6
### Infringement Analysis

# Harris Bankcorp, Inc.
## Payment by Phone System

Confidential

AUTOSCRIBE CORPORATION

# Overview

- Autoscribe is a Pioneer in the Collections Industry that has been in Business for Over 20 Years

- Autoscribe has 5 issued U.S. Patents dating back to 1992 covering Systems and Methods for Collection of Payments via an Automated System

- Autoscribe has Licensed its Patented Technology to Several Major U.S. Companies and has Thousands of Customers

- Autoscribe's Patents have been Tested in Litigation



Confidential

AUTOSCRIBE CORPORATION



# U.S. Patent No. 7,117,171
## Overview

- Autoscribe's '171 Patent covers a System and Method of Collecting Payments and Generating a Payment Order

- Information for the System is Received via Telephone by a System Operator and entered into the System via an Input Screen

- The System Verifies Bank and Account Information by Comparing Information to a System Database

- The System Generates an Electronic Payment Record or Physical Check

- The System sends Payment to a Clearinghouse for Processing and Funds Transfer

Confidential

AUTOSCRIBE CORPORATION



# U.S. Patent No. 7,117,171
## Claim 6 - Claim Language

- "A process for making payments from a payer having a financial account at a financial institution to a payee based on authorization in a telephone conversation between the payer and a system operator representing the payee, comprising the steps of..." (7 Steps)

Confidential

AUTOSCRIBE CORPORATION



# U.S. Patent No. 7,117,171 Claim 6

**Step 1 – "...providing a payment order computing system having an input screen for receiving payment order input information;"**

**Operators for Harris Bankcorp, Inc. use an input screen that is a part of a computer system provided by Harris Bankcorp, Inc. for receiving payment information from customers to pay debts, for example, auto or other loans**

Confidential

AUTOSCRIBE CORPORATION



# U.S. Patent No. 7,117,171 Claim 6

**Step 2:** "... conducting a telephone conversation with a payer who has not previously authorized payments to payee by telephone, in which said system operator obtains said payment order input information, including at least identification of said financial account and a financial institution identification code identifying said financial institution holding said financial account, and enters said payment order input information in said input screen;"

The Harris Bankcorp, Inc. system has an input screen for new customer information. In addition, the system allows the operator to enter the bank account number, name of the bank, ABA identification code, and amount of the payment.

Confidential

AUTOSCRIBE CORPORATION



# U.S. Patent No. 7,117,171 Claim 6

**Step 3:** "... using said computing system, automatically verifying said financial institution identification code upon system operator entry of said payment order input information, by comparing said code to entries in an institutional database;"

Once the operator enters a bank routing number into the payment by phone system, the system automatically verifies the identity of the bank corresponding to the routing number entered. The payment by phone system uses a database of bank routing numbers to perform the verification.

Confidential

AUTOSCRIBE CORPORATION

# U.S. Patent No. 7,117,171 Claim 6

**Step 4:** " ... if said code matches an entry in the database, retrieving identifying information about the institution and displaying said identifying information for the system operator;"

**The Harris Bankcorp, Inc. system displays for the operator the name of the bank matching the routing number entered, if there is a match in the database.**

Confidential

AUTOSCRIBE CORPORATION



# U.S. Patent No. 7,117,171 Claim 6

**Step 5:** "… if said code does not match an entry in the database, displaying an error indication to the system operator whereby the operator may request corrected information from the payer';"

If the routing number entered does not match a bank in the database, the Harris Bankcorp, Inc. system shows an error message on the screen (such as "invalid ABA number") to show the operator that the error occurred, allowing the operator to ask the customer for corrected information about the routing number for the customer's bank account.

Confidential

AUTOSCRIBE CORPORATION

# U.S. Patent No. 7,117,171 Claim 6

**Step 6:** "... using said input information, generating an electronic record containing information sufficient to generate an order to pay an amount authorized by said payer to said payee; and"

**After entry of correct information for a customer payment and customer authorization, the operator submits the input information to be processed by the Harris Bankcorp, Inc. system. The system creates an electronic record with content and formatting that are sufficient to be recognized as an order to pay the creditor from the customer's bank account, when submitted for payment through the Automated Clearing House (ACH) network.**



Confidential

AUTOSCRIBE CORPORATION

# U.S. Patent No. 7,117,171 Claim 6

Step 7: "... processing said electronic record and transmitting information to a central clearing system for processing to cause a transfer of funds from said payer account to said payee."

The Harris Bankcorp, Inc. system, either itself or via a third party plug-in, submits the payment information for processing using the ACH or similar network, which results in a payment from the customer's bank account to the creditor payee.

Confidential

AUTOSCRIBE CORPORATION

# U.S. Patent No. 7,117,171 Claim 6
## Conclusion



- Because each Element of Claim 6 is Present in the Harris Bankcorp, Inc. System, the System Infringes Claim 6 of the '171 Patent

- As a User of the Infringing System, Harris Bankcorp, Inc. is Liable to Autoscribe for Damages for Patent Infringement

- In order to continue using the Infringing System, your Harris Bankcorp, Inc. needs a License from Autoscribe

- Claim 6 of the '171 Patent is just One Example of Infringement from the Five Patents owned by Autoscribe

Confidential

AUTOSCRIBE CORPORATION