IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BMO HARRIS BANK NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>POLLIN PATENT LICENSING, LLC and AUTOSCRIBE CORPORATION,<br><br>Defendants. | Case No. 1:11-cv-7996<br><br>Judge John F. Grady<br>Magistrate Judge Morton Denlow |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
COMBINED MOTIONS TO DISMISS CERTAIN CLAIMS FOR LACK
OF SUBJECT MATTER JURISDICTION AND FOR A PROTECTIVE ORDER**

Defendants Autoscribe Corporation and Pollin Patent Licensing, LLC (collectively "Autoscribe") respectfully move the Court to dismiss counts II-V and counts VII-X of Plaintiff BMO Harris Bank N.A.'s ("BMO") Complaint in this matter for lack of subject matter jurisdiction. Autoscribe also moves the Court for a protective order precluding BMO from seeking the construction of eighty-nine (89) terms from five patents through the claim construction process.

**I.    BACKGROUND**

Autoscribe is the owner of five United States Patents: Nos. 7,117,171 ("the '171 Patent"), 6,041,315 ("the '315 patent"), 5,966,698 ("the '698 patent"), 5,727,249 ("the '249 patent") and 5,504,677 ("the '677 patent") (collectively, "the Autoscribe Patents"). The Autoscribe Patents generally relate to check by phone debt collection systems in which a payer may authorize payment from his or her checking account through a telephone communication with a live system operator. On July 5, 2011, Autoscribe's non-litigation attorney sent a letter to the general counsel of Harris Bankcorp, Inc. regarding licensing the Autoscribe Patents. ("the July Letter")

(Ex. A, 6/5/11 Letter from R. Berman to P. Nobel). In response to the July Letter, BMO did not request additional information from Autoscribe or engage in any substantive discussions regarding the content of the July Letter or Autoscribe's attempts to license one or more of its patents. Instead, on November 10, 2011, BMO filed a ten-count Complaint against Autoscribe, seeking declaratory judgments of non-infringement and invalidity of all five Autoscribe patents. [Dkt. No. 1]. On December 5, 2011, Autoscribe filed its Answer and single-count Counterclaim asserting infringement of just one of the Autoscribe Patents; namely, the '171 Patent. [Dkt. No. 11].1

Significantly, Autoscribe does not contend that BMO infringes the '315, '698, '249 or '677 patents (collectively "the Non-Asserted Autoscribe Patents"). In fact, since the filing of this lawsuit, Autoscribe has repeatedly informed BMO that it has no intent to assert claims for infringement of the Non-Asserted Autoscribe Patents against BMO. And, even the attachment to the July Letter only specifies infringement of two claim of the '171 patent (Ex. A). Consequently, Autoscribe requested that BMO voluntarily dismiss its declaratory judgment claims against Autoscribe with respect to the Non-Asserted Autoscribe Patents without prejudice. (See, for example, Ex. B, 12/19/11 email from L. Kenneally to E. Dillingham, ¶5; Ex. C, 1/13/12 email from L. Kenneally to T. Cremen; Ex. D, 1/23/12 email from L. Kenneally to T. Cremen; Ex. E, 1/30/12 email from L. Kenneally to T. Cremen). Despite Autoscribe's efforts, BMO is refusing to dismiss its claims involving the Non-Asserted Autoscribe Patents without prejudice.

---

[1] Incredibly, after alleging that all five Autoscribe's patents were invalid and not infringed, BMO sought to dismiss Autoscribe's sole counterclaim for infringement of the '171 patent. That motion was denied.

## II. COUNTS II –V (INFRINGEMENT) AND VII-X (INVALIDITY) OF BMO'S COMPLAINT INVOLVING THE NON-ASSERTED AUTOSCRIBE PATENTS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Legal Standard

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)(citations omitted) (noting that the phrase "case of actual controversy," as it appears in the Declaratory Judgment Act, refers to the types of cases that are justiciable under Article III).

In *Medlmmune*, the Supreme Court explained that, in determining whether a justiciable declaratory judgment action exists:

> [T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune,* 549 U.S. at 127 (citations omitted). Not only must there be an actual controversy between interested parties, but the "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Prieser v. Newkirk*, 422 U.S. 395, 401 (1975). In applying the "all the circumstances" test to determine whether an action for a declaratory judgment of noninfringement or patent invalidity presents a justiciable Article III controversy, Courts rely on the Supreme Court's three-part framework to determine whether an action presents a justiciable Article III controversy. *Caraco Pharm. Labs., Ltd. v. Forest Labs., Ltd.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008). Pursuant to that framework, an action is justiciable under

Article III only where (1) the plaintiff has standing, (2) the issues presented are ripe for judicial review, and (3) the case is not rendered moot at any stage of the litigation. *Id.*

Notably, the burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since. *Benitec Australia, LTD v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed.Cir. 2007). If, during the course of an action, it appears that there is no longer an actual case or controversy because "a party's legally cognizable interest in the litigation ceases to exist," the "case becomes moot" and "must be dismissed for lack of jurisdiction. *Evers v. Astrue*, 536 F.3d.651, 662 (7th Cir. 2008)("mootness is a threshold jurisdictional question that insures that the court is faithful to the case or controversy limitation in Article III of the constitution.")(citations omitted).

At issue here is whether BMO has alleged a case of actual controversy sufficient to support jurisdiction over its declaratory judgment claims for non-infringement and invalidity of the Non-Asserted Autoscribe Patents, counts II-V and counts VII-X of BMO's complaint.

### B. There Is No Case or Controversy Sufficient to Support BMO's Claims Related to the Non-Asserted Autoscribe Patents

Autoscribe contends the BMO's Complaint should be partially dismissed for lack of subject matter jurisdiction because there is no actual case or controversy with respect to BMO's claims for declaratory judgments of invalidity and non-infringement of the Non-Asserted Autoscribe Patents. As an initial matter, BMO's Complaint does not even allege that Autoscribe ever accused it of infringing the Non-Asserted Autoscribe Patents. BMO is relying entirely on the July Letter (Ex. A) as the sole basis for subject matter jurisdiction. It should be noted that upon receipt of the letter, BMO refused to discuss with Autoscribe the nature and/or scope of Autoscribe's contentions regarding infringement by BMO. BMO never even asked Autoscribe

which of the Autoscribe patents it believed were infringed by BMO. Instead, without communicating to Autoscribe, BMO filed its ten-count Complaint in this matter. Notably, however, the July Letter itself demonstrates that there is no actual case or controversy with respect to the Non-Asserted Autoscribe Patents sufficient to give rise to jurisdiction here.

First, the July Letter does not contend that BMO is infringing all of the Autoscribe patents. In fact, the July Letter states: "Autoscribe believes that you have used and are using a system which is covered by one or more of its issued U.S. Patents." (Ex. A, at 1). The July Letter also included an attached infringement analysis describing how BMO was infringing only claims 6 and 12 of the '171 Patent. Tellingly, Autoscribe did not provide any infringement analysis to BMO regarding any of the Non-Asserted Autoscribe Patents. The only patent for which Autoscribe provided an infringement analysis was the '171 Patent – the same (and only) patent that Autoscribe's Counterclaim alleges is infringed by BMO.

In an attempt to further explain the scope of its contentions, the July Letter included a document titled "Autoscribe – Steps For Prompt Resolution," which provided the following additional information to BMO:

1. U.S Patent No. 7,117,171 generally applies to check by phone systems which generate electronic records which are processed for payment.
2. U.S.Patent Nos. 6,041,315; 5,966,698; 5,727,249; and 5, 504,677 [i.e. the Non-Asserted Autoscribe Patents] generally apply to check by phone systems which generate physical drafts, which are processed for payment.
3. ***If your system only generates electronic records, your patent attorney <u>need only focus on the '171 Patent</u> and its file history***.

(Ex. A, p. 3).

During a January 23, 2012 telephone conversation regarding Autoscribe's request that BMO dismiss without prejudice its claims related to the Non-Asserted Autoscribe Patents, counsel for BMO represented that BMO's system only generates electronic drafts. Thus, according to the express language of the July Letter, under such circumstances BMO was clearly

directed to "only focus on the '171 Patent." As such, there is no basis for declaratory judgment jurisdiction as there is no case of actual controversy with respect to the Non-Asserted Autoscribe Patents.

Notwithstanding the fact that BMO purportedly only generates electronic drafts and therefore should only have focused on the '171 Patent, BMO's proffered reason for refusing to dismiss its claims with respect to the Non-Asserted Autoscribe Patents without prejudice is insufficient to create jurisdication here. The sole explanation provided by BMO for its refusal to dismiss its claims is that BMO *may* later change its system to one that generates paper drafts, creating a possibility that Autoscribe could later sue BMO again on the Non-Asserted Autoscribe Patents. That is legally insufficient.

The possibility that Autoscribe might sometime sue BMO for infringement of the Non-Asserted Autoscribe Patents over some as of yet undeveloped system is too speculative to confer jurisdiction. Under similar circumstances, Courts have found no case or controversy: *Benitec Australia, LTD v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed.Cir. 2007)(affirming dismissal of counterclaims seeking declarations of invalidity and unenforceability of the patent-in-suit for lack of justiciable controversy); *Microsoft Corp. v. WebXchange, Inc.*, 2009 U.S. Dist. LEXIS 103225, 7-8 (D. Del. Oct. 30, 2009)(granting motion to dismiss declaratory judgment claims seeking declarations that the patents-in-suit were not infringed and invalidity for lack of subject matter jurisdiction); *Drew Chemical Co. v. Hercules, Inc.*, 407 F.2d 360, 362 (2d Cir. N.Y. 1969)(affirming dismissal of declaratory judgment suit finding no "case of actual controversy" where declaratory judgment plaintiff's basis for jurisdiction was a fear of being sued based on Defendants having sued other competitors in the field for infringement); *Hartford National Bank & Trust Co. v. Henry L. Crowley & Co.*, 219 F.2d 568, 570-571 (3rd Cir. 1955)(dismissing part of complaint seeking a declaratory judgment and noting that the fear of one party that it

might sometime be sued for patent infringement was merely conjectural and not appropriate for declaratory relief); *Research Electronics & Devices Co. v. Neptune Meter Co.*, 156 F. Supp. 484 (S.D.N.Y.1957), aff'd per curiam, 264 F.2d 246 (2d Cir. 1959) (granting motion to strike portions of counterclaim of defendant seeking declaratory judgment that certain of plaintiff's non-asserted patents were invalid, on basis that there was no justiciable controversy).

Not only is there no present intention to sue BMO for infringement of the Non-Asserted Autoscribe Patents, but all of the Autoscribe Patents will expire in October 2012. Accordingly, any fear that BMO has of being sued later for future infringement of a future system is negligible and as a practical matter non-existent. There is no actual controversy between the parties with respect to the Non-Asserted Autoscribe Patents sufficient to warrant declaratory judgment jurisdiction. Autoscribe has not accused BMO of infringing the Non-Asserted Autoscribe Patents. To the contrary, Autoscribe has repeatedly informed BMO that it does not intend to pursue claims for infringement of the Non-Asserted Autoscribe Patents against BMO. Moreover, based on counsel for BMO's own statements, BMO's system does not generate paper draft and thus, the only patent for which a justiciable controversy exists is the '171 Patent. Accordingly, BMO has not carried its burden of showing a controversy of "sufficient immediacy and reality" to support jurisdiction over its claims involving the Non-Asserted Autoscribe Patents. *MedImmune*, 127 S. Ct at 1771.

Furthermore, the exclusion of any claim for infringement of the Non-Asserted Autoscribe Patents from Autoscribe's Counterclaim demonstrates that Autoscribe does not presently intend to pursue infringement litigation against BMO with respect to those patents. See, e.g., *K-Jack Engineering Co. v. Pete's Newsrack, Inc.*, 1978 U.S. Dist. LEXIS 17359, 3-4 (C.D. Cal. 1978)(Plaintiffs filing of a lawsuit without alleging infringement of particular patent indicates that it has withdrawn earlier claim of infringement for that patent; *Chubb Integrated Systems,*

*Ltd. v. National Bank of Washington*, 1983 U.S. Dist. LEXIS 16504 (D.D.C. June 2, 1983)(same).

Despite Autoscribe having informed BMO that it has no intention of suing BMO on the Non-Asserted Autoscribe Patents, BMO is refusing to dismiss its claims involving the Non-Asserted Autoscribe Patents absent a covenant not to sue. Yet, Autoscribe has **no** obligation to covenant not to sue BMO on the Non-Asserted Autoscribe Patents:

> **A patentee has no obligation to spend the time and money to test a competitors' product nor to make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit**. And the patentee's silence does not alone make an infringement action or other interference with the plaintiff's business imminent.

*Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008)(internal citations omitted)(emphasis added)(affirming dismissal of case for lack of subject matter jurisdiction); See also, *Microsoft Corp. v. WebXchange, Inc.*, 2009 U.S. Dist. LEXIS 103225, 7-8 (D. Del. Oct. 30, 2009); (same). Autoscribe is not required to covenant not to sue BMO and its refusal to do so is not sufficient to create an actual controversy. Aside from Autoscribe's July Letter which expressly informed BMO that if its system only generated paper drafts (which it allegedly does) then it only needed to consider the '171 Patent, there is no action by Autoscribe sufficient to create an actual case of controversy with respect to the Non-Asserted Autoscribe Patents. In sum, regardless of infringement of any of the Non-Asserted Autoscribe Patents by BMO, all of Autoscribe's claims of infringement will rise and fall on the '171 patent.

## III.    A PROTECTIVE ORDER IS WARRANTED

BMO is not only refusing to dismiss its declaratory judgment claims involving the Non-Asserted Autoscribe Patents, but it now seeks to waste judicial resources by having this Court construe eighty-nine terms through the claim construction process. Autoscribe has requested dismissal of BMO's declaratory judgment claims involving the Non-Asserted Autoscribe Patents

in order to streamline this case and prevent an unnecessary waste of judicial time and resources. BMO's latest proposal regarding claim construction highlights the need for dismissal of the Non-Asserted Autoscribe Patents.  (Ex. F).  It appears that BMO intends to ask this Court to construe eighty-nine terms of essentially every claim of every Autoscribe Patent, even though BMO has only been charged with infringement of claims 6 and 12 of the '171 patent. Although Autoscribe contends that BMO's claims with respect to the Non-Asserted Autoscribe Patents should be dismissed for lack of subject matter jurisdiction, at a minimum, Autoscribe seeks a protective order preventing BMO from seeking construction of more than ten claim terms of all of the Autoscribe Patents, should BMO's claims involving the Non-Asserted Autoscribe Patents not be dismissed.

**A.      Legal Standard**

Under Rule 26(c)(1), "any person from whom discovery is sought may move for a protective order in the court where the action is pending…." On such motion, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(B) specifying terms, including time and place, for the disclosure or discovery; or

(C) prescribing a discovery method other than the one selected by the party seeking discovery…"  See Fed. R. Civ. P. 26(c)(1). Under Rule 26, courts are authorized to limit discovery to that which is proper and warranted under the circumstances of the case.

**B.      BMO Should be precluded from seeking construction of eighty-nine claim terms by this Court**

In preparation for the pre-Markman conference in this matter, which is currently set for May 9, 2012, the parties agreed to exchange certain information in order to identify the parties' positions regarding claim construction.  Specifically, the parties agreed to identify the claim

terms that they believe require construction by the Court on or before February 3, 2012. And, the parties' are to provide proposed constructions for each identified claim term to be construed on February 15, 2012. On February 3, 2012, BMO served its disclosure of proposed terms to be construed by this Court, identifying almost ninety terms for construction by the Court. (Ex. F). This is precisely the reason for the Northern District of Illinois Local Patent Rule 4.1 (b), which limits the number of terms to be construed to no more than ten (10) terms. The comments to Local Patent Rule 4.1 provide:

> In some cases, the parties may dispute the construction of more than ten terms. But because construction of outcome-determinative or otherwise significant claim terms may lead to settlement or entry of summary judgment, in the majority of cases the need to construe other claim terms of lesser importance may be obviated. ***The limitation to ten claim terms to be presented for construction is intended to require the parties to focus upon outcome-determinative or otherwise significant disputes.***

See, Comments, LPR 4.1 (emphasis added). Here, BMO seeks to construe terms that not only have nothing to do with the outcome of this case, but also terms which are found in claims and patents that are not being asserted are/or not even at issue.

There is no reason for this Court to have to construe eighty-nine claim terms – regardless of whether or not BMO's declaratory judgment claims with respect to the Non-Asserted Autoscribe Patents are ultimately dismissed. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (recognizing that "district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims."); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

Requiring the parties to engage in extensive briefing regarding the proper construction of eighty-nine claim terms from five patents (particularly when there appears to be no actual case or controversy with respect four of those patents), would result in enormous burden and expense to both parties. Furthermore, any claim construction hearing involving argument related to the proper construction that many terms would result in a tremendous waste of judicial time and resources. There is just no legitimate reason for this kind of abuse of the claim construction process.

Notably, in other cases, no party has sought to interpret anywhere near as many claim terms. In *Autoscribe Corporation et al. v. Wells Fargo Bank N.A,* Civil Action No. 10-cv-202 (S.D. Ia.), only seven terms of three claims of two patents were up for consideration (Ex. G). A similar number of terms were raised in Autoscribe's prior lawsuit against Defendants Allstate, U.S. Cellular, Capital One and F.I.A. Card Services before Judge Hibbler, *Autoscribe Corporation et al. v. Allstate Insurance Company et al.*, Civil Action No. 10-cv-7420 (N.D. Ill.). And, those prior actions were resolved through settlement and license agreements.

Significantly, if the Court is inclined to dismiss BMO's claims related to the Non-Asserted Autoscribe Patents (counts II-V and VII-X of BMO's Complaint) – forty of the terms that BMO proposes require construction by the Court would be eliminated, bringing the number of terms to a still excessive fifty-one (51) claim terms of the '171 Patent. Yet, even the construction of fifty-one terms is outrageous. BMO is essentially asking the Court to construe terms from *every* claim of all five Autoscribe patents, notwithstanding the fact that Autoscribe has only asserted infringement of *two* claims of the '171 patent (claims 6 and 12 of the '171 Patent). The construction of terms from claims that Autoscribe has not asserted against BMO would result in an advisory opinion and would be an abuse of the judicial process. As such, Autoscribe seeks a protective order preventing BMO from seeking the construction of eighty-

nine claim terms. Autoscribe respectfully requests that the court limit the number of terms to be construed to only ten terms from claims 6 and 12 of the '171 Patent only.

## IV.     CONCLUSION

For the reasons set forth above and in Autoscribe's Memorandum In Support of Defendants' Combined Motion To Dismiss For Lack of Subject Matter Jurisdiction and For A Protective Order, Autoscribe respectfully requests that the Court: 1) dismiss counts II-V and counts VII-X of BMO's Complaint for lack of subject matter jurisdiction, and 2) enter a protective order limiting the number of claim terms to be construed by the Court to ten terms from claims 6 and 12 of the '171 Patent only.

Respectfully submitted,

*/s/Laura A. Kenneally*
Raymond P. Niro
Robert A. Vitale, Jr.
Patrick F. Solon
Laura A. Kenneally
Gabriel I. Opatken
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137
RNiro@nshn.com; Vitale@nshn.com;
Solon@nshn.com; LKenneally@nshn.com;
GOpatken@nshn.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 10, 2012 the foregoing

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR COMBINED MOTIONS TO DISMISS CERTAIN CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR A PROTECTIVE ORDER

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

Emily Newhouse Dillingham
PAUL HASTINGS LLP
191 N. Wacker Drive, 13th Floor
Chicago, IL 60606
emilydillingham@paulhastings.com

Robert M. Masters
Timothy P. Cremen
Lisa Y. Leung
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
robmasters@paulhastings.com
timothycremen@paulhastings.com
lisaleung@paulhastings.com

Bob Chen
PAUL HASTINGS LLP
4747 Executive Drive
Twelfth Floor
San Diego, CA 92121
bobchen@paulhastings.com

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

*/s/Laura A. Kenneally*
Attorneys for Defendants
NIRO, HALLER & NIRO