11-7996.121-JCD                                           September 20, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

```
BMO HARRIS BANK                    )
NATIONAL ASSOCIATION,              )
                                   )
              Plaintiff,           )
                                   )
         v.                        )     No. 11 C 7996
                                   )
POLLIN PATENT LICENSING, LLC and   )
AUTOSCRIBE CORPORATION,            )
                                   )
              Defendants.          )
```

**MEMORANDUM OPINION**

Before the court are three motions: (1) defendants' motion to dismiss Counts II-V and VII-X of plaintiff's complaint for lack of subject matter jurisdiction; (2) defendants' motion for a protective order precluding plaintiff from seeking the construction of eighty-nine claim terms; and (3) plaintiff's motion for judgment on the pleadings. For the reasons explained below, each motion is denied.

**BACKGROUND**

This patent case relates to check-by-phone debt-collection systems "in which a payer may authorize payment from his or her checking account through a telephone communication with a live system operator." (Defs.' Mem. in Supp. of Mots. at 1.) Plaintiff, BMO Harris Bank National Association ("BMO"), seeks declaratory judgment of non-infringement and invalidity of five patents: U.S.

- 2 -

Patent No. 7,117,171, entitled "System and Method for Making a Payment from a Financial Account" (the "'171 patent"); U.S. Patent No. 6,041,315, entitled "Automated Payment System and Method" (the "'315 patent"); U.S. Patent No. 5,966,698, entitled "Automated Payment System and Method" (the "'698 patent"); U.S. Patent No. 5,727,249, entitled "Automated Payment System and Method" (the "'249 patent"); and U.S. Patent No. 5,504,677, entitled "Automated Payment System" (the "'677 patent"). Defendant Autoscribe Corporation is the owner by assignment of the five patents, and defendant Pollin Patent Licensing, LLC is the exclusive licensee.

Defendants have filed a counterclaim for infringement of the '171 patent only. They move to dismiss Counts II-V and VII-X of the complaint, which concern the remaining four patents, for lack of subject-matter jurisdiction based on a lack of case or controversy. They also move for a protective order that would preclude BMO from seeking the construction of more than ten terms from the '171 patent. BMO moves for judgment on the pleadings on Counts II-V of its complaint, arguing that defendants have conceded that there is no infringement of the '315, '698, '249, and '677 patents (to which we will refer collectively as the "Four Patents").

## DISCUSSION

**A.** **Defendants' Motion to Dismiss for Lack of Jurisdiction**

The Declaratory Judgment Act (the "Act") provides that "[i]n

a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Act itself does not create a basis for federal jurisdiction; a party seeking to establish jurisdiction under the Act bears the burden of proving that the facts alleged, "'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1343 (Fed. Cir. 2007) (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)).  The dispute must be "definite and concrete," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, 549 U.S. at 127 (brackets omitted).

"The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since."  Benitec, 495 F.3d at 1344.  If a party has actually been charged with infringement of a patent, there is necessarily a case or controversy adequate to support jurisdiction at that time.  Id. (quoting Cardinal Chem. Co. v. Morton Int'l,

- 4 -

Inc., 508 U.S. 83, 96 (1993)).  Once the burden of establishing
jurisdiction has been met, jurisdiction continues absent further
information; the burden of bringing forth such further information
"may logically rest with the party challenging jurisdiction, but
the actual burden of proof remains with the party seeking to invoke
jurisdiction."  Benitec, 495 F.3d at 1344-45 (citation omitted).

The first issue is whether jurisdiction existed at the time
BMO filed the complaint.  To establish jurisdiction, the complaint
relies on a patent demand letter that was sent to BMO on July 5,
2011 by defendants' agent, a third party called IP Dispute
Resolution Corporation.  The letter states in pertinent part:

> IPDR is a business consulting firm that specializes in
> resolving patent disputes.  We have successfully resolved
> more than 500 disputes alleging patent infringement. . .
> .
> IPDR has been hired by Autoscribe Corporation which
> owns 5 U.S. patents (U.S. Pat Nos. 7,117,171; 6,041,315;
> 5,966,698; 5,727,249, and 5,504,677) covering certain
> check by phone payment systems involving a live operator.
> . . .
> Autoscribe believes that you have used and are using
> a system which is covered by one or more of its issued
> U.S. patents.
> Autoscribe has already successfully licensed its
> patents to several major U.S. companies . . . .
> Under U.S. patent law, the manufacture, sale, or use
> of a patented system or process, without a license from
> the patent owner, constitutes patent infringement. . . .
> We understand that receiving a letter alleging patent
> infringement is not a pleasant experience. . . . Please
> review the enclosed instructions entitled **"AUTOSCRIBE -
> STEPS FOR PROMPT RESOLUTION"**, which will guide you
> through the process of resolving this matter.
> IPDR has a limited period of time to resolve this
> matter, and has successfully done so in as little as 30
> days.  However, this matter will not go away on its own.
> If you do nothing, or do not respond in a timely manner,

- 5 -

Autoscribe will take the matter away from IPDR and turn it over to Autoscribe's patent litigation attorneys. . . . Please give this matter your immediate attention and work with us. . . .

As evidence of our good faith and willingness to work with you to resolve this matter, enclosed is a presentation which explains how claims 6 and 12 of the '171 Patent apply to the check by phone collection system you are using. Also enclosed is a CD containing copies of the patents, and file histories for the patents.

We will contact you in approximately fourteen (14) days to confirm your receipt of these materials . . . .

(Defs.' Mem. in Supp. of Mots., Ex. A, at 1-2.)

The "Autoscribe - Steps for Prompt Resolution" attachment to the letter instructs BMO to perform an analysis of its system that processes check-by-phone transactions, and then states in relevant part:

Once you have determined that you are not using a check by phone system which is already licensed by Autoscribe, you may want to engage a patent attorney to review the Autoscribe infringement allegations. . . . Please note the following:

1. U.S. Patent No. 7,117,171 generally applies to check by phone systems which generate electronic records which are processed for payment.

2. U.S. Patent Nos. 6,041,315; 5,966,698; 5,727,249, and 5,504,677 generally apply to check by phone systems which generate physical drafts, which are processed for payment.

3. If your system only generates electronic records, your patent attorney need only focus on the '171 patent and its file history.

4. Autoscribe has previously engaged in and is currently engaged in patent infringement litigation regarding its check by phone patents. IPDR will supply any pleadings from Autoscribe's litigations that your attorney would like to review.

- 6 -

    Once any legal defenses have been identified, the parties
can assess their relative risks and determine the next
courses of action.

(Defs.' Mem. in Supp. of Mots., Ex. A, at 3.)

    Also attached to the letter is a 12-page document entitled
"Autoscribe U.S. Patent No. 7,117,171 Claim 6 Infringement
Analysis," which describes the '171 patent, in particular claim 6,
and explains defendants' allegations of how BMO's system "Infringes
Claim 6 of the '171 Patent." (Defs.' Mem. in Supp. of Mots., Ex.
A, at 15.) The last page of the analysis states: "Claim 6 of the
'171 Patent is just One Example of Infringement from the Five
Patents owned by Autoscribe." (Defs.' Mem. in Supp. of Mots., Ex.
A, at 15.)

    The complaint also alleges that on September 21, 2010, IPDR
sent BMO a letter on behalf of defendants that indicated that
defendants were offering BMO a license to the patents, but that
there was only a "limited time period within which to come to an
amicable resolution." On October 13, 2011, "IPDR again sent on
Defendants' behalf an email inquiring 'Any update from [BMO] on
their due diligence for the Autoscribe matter?'" (Compl. ¶ 24.)
BMO filed the instant suit on November 10, 2011.

    Defendants contend that there was no case or controversy as to
the Four Patents at the time the complaint was filed because the
letter charged BMO with infringing just the '171 patent. They
point out that it was the only patent for which an infringement

analysis was provided and argue that the analysis described "how BMO was infringing only claims 6 and 12 of the '171 Patent." They also emphasize the statement that BMO's "patent attorney need only focus on the '171 patent and its file history" if its system "only generates electronic records." According to defendants, BMO's counsel has "represented that BMO's system only generates electronic drafts." (Defs.' Mem. in Supp. of Mots. at 5.)

BMO maintains that the demand letter created declaratory-judgment jurisdiction as to all five patents because it specifically identified all of them, indicated that defendants believed BMO to be "using a system which is covered by one or more of [defendants'] issued U.S. patents," sought to license the patents, warned that the matter could be turned over to "Autoscribe's patent litigation attorneys" if not resolved, and specified in the analysis that claim 6 was "just one example of infringement from the five patents owned by Autoscribe." (BMO's Reply in Supp. of Mot. for J. on the Pleadings at 5-6.)[1] In addition, we note that the letter referred to itself as a "letter alleging patent infringement" and threatened litigation if BMO did not "respond in a timely manner." We agree with BMO that the letter charged BMO with infringement of all five patents and therefore created a case or controversy to support jurisdiction.

---

[1] BMO also argues that in determining whether there is a case or controversy here, we should consider other lawsuits in which defendants allege that other parties have infringed all five patents. We need not consider prior litigious conduct; the demand letter alone is sufficient to create jurisdiction.

- 8 -

The letter does not, as defendants contend, merely "identif[y]" the Four Patents and "request [] further discussion." (Defs.' Combined Reply at 8.) Defendants make much of the letter's instruction to "only focus on the '171 patent" in the event that BMO's system generates electronic records, but this statement is not equivalent to a disclaimer of the infringement accusation. BMO has established that declaratory-judgment jurisdiction existed at the time it filed this action.

The next question is whether, given the "further information" that defendants have provided in their briefs, BMO has shown that jurisdiction continues to exist. Defendants note that they have asserted a counterclaim for infringement of solely the '171 patent, and they contend that their current position regarding the Four Patents eliminates any justiciable controversy. Defendants' position appears to have evolved. They state in their opening brief that they have "no intent to assert claims for infringement" of the Four Patents, that they have so informed BMO repeatedly, and that they do not "presently intend to pursue infringement litigation against BMO with respect to the" Four Patents. (Defs.' Mem. in Supp. of Mots. at 2, 7.) They also state that "any fear that BMO has of being sued later for future infringement of a future system is negligible and as a practical matter non-existent" because all of defendants' patents will "expire in October 2012." (Defs.' Mem. in Supp. of Mots. at 7.) In their reply, defendants

- 9 -

take it up a notch, stating that they "will not assert claims for infringement of the [Four Patents] against BMO at a later date," "will not now, or at any time in the future, assert the [Four Patents] against BMO," and "will not sue BMO for infringement of the [Four Patents]." (Defs.' Combined Reply at 3, 9, 10.) Defendants refuse, however, to execute a "formal stipulation of non-infringement and/or covenant not to sue" and contend that they are not obligated to do so. (Defs.' Combined Reply at 3.)

As BMO points out, defendants' statements are not phrased as covenants or promises, and they are vague in several respects. They are not specific as to which of BMO's products or activities are covered by the representation. Nor do defendants provide a time frame (past activities or future activities, or both) or specify whether the representation applies to BMO only or its affiliates or other related parties as well.

In support of their argument that that they are not required to enter into a formal stipulation or covenant not to sue BMO, defendants cite two cases, Prasco, LLC v. Medicis Pharmaceutical Corp., 537 F.3d 1329 (Fed. Cir. 2008), and Microsoft Corp. v. WebXchange, Inc., C.A. No. 09-484-JJF, 2009 WL 3534845 (D. Del. Oct. 30, 2009), neither of which is on point. In Prasco, there was no patent demand letter; the defendants had not accused plaintiff of infringement or asserted any rights to plaintiff's products, nor had they taken action that implied any such claims. 537 F.3d at

1340. Similarly, in WebXchange, there was no patent demand letter, and the defendant had not accused the plaintiff itself of infringement, merely plaintiff's customers.

We can infer that defendants refuse to enter into a covenant or promise not to sue because they simply do not want to be bound by their representation. They are entitled to retain their right to sue for infringement of the Four Patents, but by retaining that right, they have "preserved this controversy at a level of 'sufficient immediacy and reality'" to allow BMO to pursue its claims for declaratory judgment as to those patents. See, e.g., Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1300 (Fed. Cir. 2009) (holding that, where plaintiff's covenant not to sue applied only to defendant's past activities and did not extend to future sales of defendant's products, an actual controversy existed within the meaning of the Declaratory Judgment Act). Accordingly, a case or controversy still exists between BMO and the defendants as to the Four Patents, and there is a basis for us to continue to exercise jurisdiction as to the claims involving those patents. The motion to dismiss Counts II-V and VII-X of the complaint will be denied.

**B. Defendants' Motion for a Protective Order**

Defendants assert that BMO "seeks to waste judicial resources by having this Court construe eighty-nine terms through the claim construction process" and seek a protective order preventing BMO

from seeking construction of more than ten claim terms. (Defs.'
Mem. in Supp. of Mots. at 8-9.) BMO responds that the motion is
premature because at the time it was filed, the parties had
completed only the first step in the process to narrow claims-
construction issues. The parties had not yet exchanged proposed
constructions or completed the meet-and-confer process.

We agree with BMO that defendants' motion is premature. The
parties filed the instant motions early in the claims-construction
process, and we later suspended the claims-construction schedule
pending our rulings. We have not even held a pre-<u>Markman</u> hearing,
so we decline to enter an order regarding the proper scope of
claims construction at this juncture. The motion for a protective
order will be denied.

**C.   <u>Plaintiff's Motion for Judgment on the Pleadings</u>**

BMO repeatedly contends that defendants "have conceded non-
infringement" of the Four Patents. (Pl.'s Mem. in Supp. of Mot.
for J. on the Pleadings at 5, 6; Pl.'s Reply in Supp. of Mot. for
J. on the Pleadings at 1, 4, 5, 10, 12, 13, 14.) This contention
mischaracterizes defendants' arguments. Their statements that they
are "not asserting" the Four Patents against BMO and have no
intention to do so are not the same as conceding that BMO has not
infringed the patents. BMO strains mightily to cast defendants'
statements as concessions of non-infringement, but it fails.
Judgment on the pleadings is not appropriate. Plaintiff's motion

- 12 -

will be denied.

## CONCLUSION

Defendants' motion to dismiss for lack of jurisdiction [29] is denied. Defendants' motion for a protective order [29] is denied. Plaintiff's motion for judgment on the pleadings [35] is denied.

A status hearing is set for October 10, 2012 at 10:30 a.m. to discuss a new schedule for claims construction.


DATE:      September 20, 2012


ENTER:    _____

John F. Grady, United States District Judge